UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FORMAINE Y.D.,<br><br>                    Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO, Acting Commissioner of Social Security,[1]<br><br>                    Defendant. | Case No.: 24-cv-1815-DDL<br><br>**ORDER AFFIRMING COMMISSIONER'S DECISION AND ENTERING JUDGMENT IN COMMISSIONER'S FAVOR** |

Plaintiff Formaine Y.D. seeks judicial review of the Social Security Commissioner's denial of her application for disability benefits. *See* Dkt. No. 1. The parties have consented to the undersigned's jurisdiction. Dkt. No. 5. For the reasons stated below, the Court finds the Commissioner's determination that Plaintiff is not disabled is free of legal error and supported by substantial evidence in the record. The Commissioner's decision is therefore **AFFIRMED**.

/ / /

/ / /

---

[1]   Frank Bisignano is automatically substituted for Martin O'Malley pursuant to Federal Rule of Civil Procedure 25(d).

# I.

# BACKGROUND

## A.  Plaintiff's Application for Disability Benefits

Plaintiff applied for disability insurance benefits under Title II of the Social Security Act (the "Act") on February 1, 2023. Certified Administrative Record ("AR") [Dkt. No. 7] at 10, 146-49. She alleges she has been unable to work since February 12, 2021 because of her disabling impairments. *Id.* After her application was denied at the initial stage and upon reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"), which occurred by telephone on April 16, 2024 before ALJ Howard K. Treblin. *Id.* at 10. Plaintiff appeared with counsel and gave testimony. *Id.* at 10, 35-42. Vocational expert Alan E. Cummings also testified at the April 16 hearing. *Id.* at 10, 43-47. The ALJ issued an unfavorable decision on July 24, 2024, having concluded Plaintiff "has not been under a disability, as defined in [the Act], from February 12, 2021, through the date of [the] decision." *Id.* at 28. On September 13, 2024, the Appeals Council denied review, and the ALJ's decision became final. *See id.* at 1-3.

## B.  Summary of the ALJ's Findings

A person is considered "disabled" within the meaning of the Act if they suffer from a medically determinable physical or mental impairment which is expected to last at least a year and is of such severity that they cannot work, considering their age, education, and work experience. *See* 42 U.S.C. § 423(d). The Administration employs a sequential five-step evaluation to make this determination.[2]

---

[2]  The ALJ must determine the following: at step one, whether the claimant is engaged in substantial gainful activity; at step two, whether the claimant suffers from a severe impairment within the meaning of the regulations; at step three (if the claimant suffers from a severe impairment), whether the impairment meets or is medically equal to one of the impairments identified in the Listing of Impairments; at step four, the claimant's residual functional capacity ("RFC") based on all impairments and whether, given the RFC, the claimant can perform his or her past relevant work; at step five, whether the claimant can

The ALJ followed this five-step process in adjudicating Plaintiff's disability claim. *See generally* AR at 12-26. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since February 12, 2021, the alleged onset date of her disability. *Id*. at 12. At step two, the ALJ found Plaintiff had the following severe impairments: "lower back pain, full thickness rotator cuff tendon tear of the left shoulder, full thickness tear of the supraspinatus tendon of the right shoulder with tendinosis, torn ACL ligament of the left knee, right knee strain, carpal tunnel syndrome of the bilateral wrist, hallux valgus and bunion of the bilateral foot, depressive, bipolar, and related disorders, and trauma-and stressor-related disorder." *Id*.[3] Considering the four broad functional areas of mental functioning known as the "Paragraph B criteria," the ALJ found that Plaintiff had mild limitations in her ability to adapt or manage herself and moderate limitations in understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace. *Id*. at 14. The ALJ also considered mental health assessments in the record. *Id*. at 20-22. Based on this evidence and the Paragraph B analysis, the ALJ concluded that the "severity of the claimant's mental impairments . . . do not meet or medically equal the criteria of listing 12.04 and 12.15," and that "[b]ecause the claimant's mental impairments do not cause at least two marked limitations or one extreme limitation, the paragraph B criteria are not satisfied." *Id.* at 14.

---

make an adjustment to other work based on his or her RFC. If the claimant is found not disabled at any step, the analysis does not proceed to the next step. *See* 20 C.F.R. § 404.1520.

[3] Although the record mentions additional impairments related to "headaches/migraines and sleep apnea," there were "minimal treatment records related to these conditions" and the ALJ found "no objective medical evidence to support any durational functional limitations on basic work activities." AR at 14. The ALJ thus deemed these impairments non-severe because they caused no more than "minimal limitation in [Plaintiff's] ability to perform basic work activities." *Id;* 20 C.F.R. § 404.1522(a) ("An impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities.")

At step three, the ALJ found Plaintiff's impairments did not meet or medically equal a listed impairment. *Id*. at 13. At step four, the ALJ determined that despite her impairments, Plaintiff could:

> perform light work as defined in 20 CFR [§] 404.1567(b) except the claimant could frequently lift and/or carry 10 pounds and occasionally lift and/or carry 20 pounds. The claimant could sit for 6 hours in an 8-hour workday and stand and/or walk for 4 hours in an 8-hour workday. The claimant has no limitation with regards to pushing and/or pulling other than what is comparable to the amount of weight for lifting and/or carrying. The claimant can frequently use hand controls bilaterally. The claimant could occasionally climb ramps and stairs, and never climb ladders, ropes and scaffolds. The claimant could occasionally balance, stoop, kneel, crouch and crawl. The claimant could occasionally reach overhead bilaterally. The claimant could frequently handle and finger bilaterally and feeling is unlimited. The claimant would need to avoid concentrated exposure to extreme cold and vibration and would need to avoid all unprotected heights and dangerous moving machinery. The claimant is able to understand, remember, and carry out simple tasks, unskilled type work, simple job instructions. The claimant could interact appropriately with coworkers and supervisors, however, there should be no teamwork or collaborative work. The claimant is able to make appropriate handoffs of work materials and products to coworkers and supervisors. The claimant should have limited public contract (i.e., occasional, brief, superficial, non-job performance related contact with the public). The claimant is able to respond appropriately to supervision and routine work settings as well as changes in routine works settings and situations. The claimant can appropriately make decisions, ask questions, and use judgment.

AR at 15.

In formulating this RFC, the ALJ considered Plaintiff's subjective testimony regarding her limitations. *Id.* at 16-18. The ALJ found that although Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, the "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 16-24.

The ALJ also considered medical opinion evidence and prior administrative medical findings in the record. *Id.* at 22-25. The ALJ found responses to a medical interrogatory

by Matt Dorweiler, M.D. partially persuasive except to the extent they were inconsistent with, and more restrictive than, state agency findings. *Id.* at 22-23. The ALJ found an orthopedic evaluation by Juliane Tran, M.D. partially persuasive except to the extent it was inconsistent with, and less restrictive than, other findings in the record. *Id.* at 23. The ALJ found responses to a medical interrogatory by Les Kertay, Ph.D. generally persuasive because Dr. Kertay's opinion that the claimant had mild to moderate limitations in the mental functioning areas was consistent with the record. *Id.* The ALJ found the psychological consultative examination by Jerry Livesay, Ph.D. mostly unpersuasive because Dr. Livesay's opinion that Plaintiff had marked limitations in several of her mental functioning areas was inconsistent with mental health treatment records and other medical opinions. *Id.* at 24. The ALJ found the assessments by state agency medical consultants M. Amado, M.D. and M. Mazuryk, M.D. partially persuasive; although most of the assessments were "supported by explanation with reference to the evidence of record," some findings—such as the limitation to standing/walking for 6 hours—were inconsistent with other evidence in the record. *Id.* at 24-25. The ALJ found the findings of state agency psychological consultants Sergiy Barsukov, Psy.D., and G. Rivera-Miya, M.D. somewhat supported by the record, except that the assessment that Plaintiff is limited to one to two step instructions was inconsistent with mental status examinations and Plaintiff's successful management of depression and anxiety symptoms with medication. *Id.* at 25. Finally, neither the opinion offered by Plaintiff's treating acupuncturist Teresa Onan, L.Ac that Plaintiff is completely disabled, nor the disability finding by the United States Department of Veterans Affairs, were persuasive because the question of whether Plaintiff is disabled is a determination reserved for the Commissioner.[4] *Id.* at 25-26.

///

---

[4] Decisions by other governmental agencies (20 C.F.R. 404.1504) and statements on issues "reserved to the Commissioner" are types of "[e]vidence that [are] inherently neither valuable nor persuasive." 20 C.F.R. 404.1520b(c)(3)(i).

After detailing consultative examiners' reports and medical records, the ALJ concluded "there are several reasons why the claimant's impairments do not support greater limitations in the residual functional capacity." *Id.* at 18. First, Plaintiff's "conservative course of treatment is inconsistent" with what "one would expect for a totally disabled individual." *Id.* Second, the record shows "various forms of treatment for [Plaintiff's] pain symptoms, as described above, . . . have generally been successful in controlling these symptoms." *Id.* at 19 (citing *id.* at 514, 517, 533, 604, 606, 668, 701, 704-05, 715, 822, 955) (treatment notes describing reported improvements in conditions or decreases in pain symptoms from medical treatment). Third, "clinical findings do not support the claimant's pain and limitations are as severe and limiting as alleged." *Id.* at 19.

As to physical symptoms, the ALJ noted Plaintiff: ambulated independently and had range of motion of the bilateral upper extremities within functional levels (*id.* at 684, 848); had normal gait pattern (*id.* at 410); had full range of motion of the bilateral hip and the bilateral knee (*id.* at 410-11); had full range of motion of the elbow joints and wrist joints with positive Tinel's tests, and full range of motion of the fingers and thumbs bilaterally (*id.* at 412); had "5/5 strength in the bilateral upper and lower extremities, including grip, with normal muscle bulk and tone and no muscle atrophy" (*id.* at 413); and presented knee joint space that "was well maintained with no fractures, no osteophytes present, and normal soft tissue planes" (*id.* at 407). As to mental symptoms, the ALJ noted they were "relatively stable while the claimant was compliant with psychotropic medication," and that "mental status exams during the period at issue, aside from some depressed, anxious or dysphoric mood and tearful or constricted affect, were mostly unremarkable." *Id.* at 20-21. And fourth, Plaintiff's activities of daily living are inconsistent with the alleged intensity, persistence, and limiting effects of her symptoms. *Id.* at 22. Lastly, the ALJ considered the non-medical opinions of Plaintiff's spouse and sister. *Id.* at 26. The ALJ reviewed this information for "context regarding some of the challenges faced by the claimant relative to coping with the chronic nature of her impairments," but concluded that it "cannot serve as the basis for finding a disability where the medical evidence does not support such a

finding." *Id.*

Having considered the record as described above, ALJ concluded that "the above [RFC] assessment is the most that the claimant could do on a regular and continuing basis despite the claimant's impairment-related limitations." *Id.* Based on the RFC and the testimony of the vocational expert, the ALJ further found at step four that Plaintiff could not perform her past relevant work as a safety officer. *Id.* At step five, the ALJ found Plaintiff "capable of making a successful adjustment to other work that exists in significant numbers in the national economy" based on the vocational expert's testimony regarding jobs which could be performed by someone with Plaintiff's RFC. *Id.* at 28-29. In so finding, the ALJ noted that the vocational expert's testimony was uncontradicted, based on their training, observations, and experience in the vocational field, and consistent with the information contained in the Dictionary of Occupational Titles ("DOT"). *Id.* at 29.

Based on the foregoing five-step analysis, the ALJ concluded Plaintiff had not been under a disability within the meaning of the Act during the relevant period. *Id.*

## II.
## **DISPUTED ISSUES**

Plaintiff identifies three disputed issues on appeal:

1) Whether the ALJ properly considered medical opinions expressing a more severe limitation to one to two step tasks in Plaintiff's RFC;

2) Whether the ALJ stated clear and convincing reasons to reject Plaintiff's subjective testimony; and

3) Whether the ALJ resolved a conflict between Plaintiff's RFC and the DOT as to Plaintiff's standing/walking limitations.

Dkt. No. 9 at 5, 12, 19.

///
///
///
///

# III.

# **STANDARD OF REVIEW**

The Court's review of the Commissioner's final decision is "highly deferential." *Kitchen v. Kijakazi*, 82 F. 4th 732, 738 (9th Cir. 2023).[5] The Court "will disturb the denial of benefits only if the decision contains legal error or is not supported by substantial evidence." *Id.* "Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and must be more than a mere scintilla, but may be less than a preponderance." *Id.* The Court must review the entire record and consider adverse as well as supporting evidence. *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021). The Court "may not reweigh the evidence or substitute [its] judgment for that of the ALJ." *Id.* Moreover, "[t]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Id.* If the evidence is susceptible of more than one rational interpretation, the ALJ's decision must be upheld. *Id.* at 1115-16. However, the Court cannot affirm "on a ground upon which [the ALJ] did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014). Where the ALJ commits legal error, the Court may affirm the decision if the error is harmless, meaning "it is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

///
///
///
///

---

[5] All citations, internal quotation marks, and subsequent history are omitted, and emphasis is added, unless otherwise noted.

# IV.
# DISCUSSION

## A. Plaintiff Has Not Demonstrated Harmful Error

With the foregoing legal standards in mind, the Court addresses each of the disputed issues above.

### 1. *Other medical opinions suggesting a stricter RFC*

As a first charge of error, Plaintiff argues the ALJ failed to consider "other treatment notes consistent with deficient memory" in rejecting a "limitation to one to two step tasks" in Plaintiff's RFC. Dkt. No. 9 at 9-11. Plaintiff argues that such a limitation was necessary because she repeatedly presented with short-term memory problems, attention deficits,[6] and dysthymic mood and dysphoric and blunted affect, and gave abnormal responses to questions at the consultative mental examination conducted by Dr. Livesay.[7] *Id.* at 10. Furthermore, Plaintiff argues, "the ALJ's citation of improvement with medication compliance" is not "a sufficient ground for rejecting a limitation to one to two step tasks." *Id.* at 11. The Court disagrees with Plaintiff's argument.

The ALJ must "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Said differently, the ALJ "need not take every medical opinion at face value." *Cross v. O'Malley*, 89 F.4th 1211, 1213 (9th Cir. 2024). "Rather, the ALJ must scrutinize the various—often conflicting—medical opinions to determine how much weight to afford each opinion." *Id.* at 1213-14. The "most important factors" the ALJ must consider in doing so are "supportability" (whether the provider supported their opinion with citations to objective findings) and "consistency" (whether the opinion is consistent with other evidence in the record). 20 C.F.R. § 404.1520c(a); *id.* § 404.1520c(c)(1) (defining "supportability" and "consistency").

---

[6] Citing AR at 512, 613-14, 823, 854, 965, 971.
[7] Citing AR at 416-422.

      The ALJ identified specific evidence in the record undermining the severity of some restrictions in the medical findings of Dr. Barsukov, Dr. Rivera-Miya, and Dr. Livesay.[8] Specifically, the ALJ noted that "[m]ental status examinations . . . were generally unremarkable and found the claimant's memory and/or concentration was grossly intact with intact/normal cognition and normal speech." *Id.* at 25 (citing *id.* at 474 (March 31, 2023 VA progress note listing "clear and coherent" thought process, "grossly intact" memory, and "intact" judgment); *id.* at 455-56 (same on April 26, 2023); *id.* at 449 (same on May 4, 2023); *id.* at 528-29 (same on August 17, 2023); *id.* at 519 (same on August 25, 2023); *id.* at 503 (same on September 7, 2023); *id.* at 804 (same on November 27, 2023); *id.* at 779 (same on January 10, 2024)). Additionally, on April 27, 2024, Dr. Kertay provided a medical interrogatory response after the hearing opining that Plaintiff had no limitations on understanding, remembering, or carrying out simple instructions and only mild limitations on understanding, remembering, or carrying out complex instructions. *Id.* at 23 (citing *id.* at 1035-1043).

      Considering these medical findings, the ALJ rationally found parts of Drs. Barsukov, Rivera-Miya, and Livesay's reports—those indicating marked limitations in mental functioning or limitations to one to two step instructions—unpersuasive. As detailed above, the ALJ identified contrary findings supporting the omission of a one to two step limitation in the RFC. Thus, the ALJ found these more restrictive limitations not "consistent with the evidence from other medical sources and nonmedical sources in the

---

[8] The ALJ also noted the record indicates Plaintiff's treatment was generally successful in controlling Plaintiff's symptoms. The Court discusses this point in the section below related to discrediting Plaintiff's subjective symptom testimony. But the Ninth Circuit has "particularly criticized the use of a lack of treatment" to reject physician opinions. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299 (9th Cir. 1999); *see also Ferrando v. Comm'r of Soc. Sec. Admin.*, 449 F. App'x 610, 611 (9th Cir. 2011) (claimant's "failure to seek treatment for his mental illness . . . is not a clear and convincing reason to reject his psychiatrist's opinion"). Thus, the Court does not discuss or rely on this reason in this section.

claim." 20 C.F.R. § 404.1520c(c)(2). This was not error. *See Coleman v. Saul*, 979 F.3d 751, 757 (9th Cir. 2020) ( "the ALJ provided legally sufficient reasons" to reject medical opinion where "the full medical record casts doubt on the severity of the limitations assessed").

### 2. *ALJ's rejection of Plaintiff's subjective testimony*

As a second charge of error, Plaintiff asserts the ALJ failed to provide clear and convincing reasons to reject her subjective testimony. The Court disagrees.

The ALJ "is not required to believe every allegation of disabling pain." *Molina*, 674 F.3d at 1112. However, in the absence of evidence of malingering, an ALJ must offer "specific, clear and convincing reasons" for rejecting a claimant's subjective testimony regarding the limitations caused by his impairment. *Ferguson v. O'Malley*, 95 F.4th 1194, 1199 (9th Cir. 2024); *Smartt v. Kijakazi*, 53 F.4th 489, 497 (9th Cir. 2022) ("an adverse credibility finding must be based on clear and convincing reasons"). "Because symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone," the ALJ must consider "all of the evidence presented," including information about the claimant's prior work record, statements about symptoms, evidence from medical sources, and observations by the Agency's employees and other individuals. 20 C.F.R. § 404.1529(c)(3). The ALJ may also consider the claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain; and treatment. *Id.*

After reviewing the evidence in the record, the ALJ concluded Plaintiff's medically determinable impairments could reasonably be expected to cause many of her alleged physical symptoms. AR at 15. Based on his review of the record, however, the ALJ found Plaintiff's "statements about the intensity, persistence, and limiting effects of her" impairments "are inconsistent with the record because, as discussed in detail below, the record reveals stable findings which show that the claimant's subjective complaints are disproportionate to objective findings." *Id.* at 16-17. Specifically, as relevant to the issue here, the ALJ found not credible the severity of Plaintiff's allegations of difficulty with

"memory, completing tasks, concentration, understanding, following instructions . . . and getting along with others." *Id.* at 16 (citing *id.* at 37-39, 41, 221) (Plaintiff's function report and hearing testimony). The ALJ discounted Plaintiff's subjective symptom testimony citing the following reasons: (1) Plaintiff's symptoms improved with treatment; (2) objective medical evidence undermined Plaintiff's allegations; and (3) Plaintiff's activities of daily living were inconsistent with her testimony. *Id.* at 21-22.

First, Plaintiff's symptoms were "relatively stable while the claimant was compliant with psychotropic medication." *Id.* at 21 (discussing improvements in handling emotions and mood when taking Prozac or Cymbalta, and when participating in therapy sessions). In assessing Plaintiff's subjective symptoms, the ALJ may properly consider the "type, dosage, effectiveness, and side effects of any medication taken to alleviate pain." 20 C.F.R. § 404.1529(c)(3)(iv)-(v). As Plaintiff correctly notes, "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." Dkt. No. 9 at 13 (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996)).[9] But here, the ALJ did not discount Plaintiff's subjective testimony merely because she expressed a desire to taper off medications against doctors' orders. Instead, he permissibly considered "evidence of medical treatment successfully relieving symptoms" as one factor that "can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) (citing 20 C.F.R. §§ 404.1520a(c)(1)); *Guthrie v. Kijakazi*, No. 21-36023, 2022 WL 15761380, at *1 (9th Cir. 2022) (finding that the ALJ reasonably relied on evidence of improvement with treatment to discount a claimant's symptoms allegations). Furthermore, "there is no evidence in the record that [Plaintiff's] decision" to disobey doctor recommendations was "at least in part a result of her . . .

---

[9] *See also Regennitter*, 166 F.3d at 1299 (plaintiff's failure to seek treatment by a mental professional is not "a valid reason for the ALJ to reject" a medical opinion).

psychiatric issues." *Niemi v. Saul*, 829 F. App'x 831, 832 (9th Cir. 2020).[10] Rather, "she decided to stop taking her Prozac due to her desire to be free of any psychotropic medications" and "stopped taking Cymbalta . . . due to its side effects." Dkt. No. 9 at 13. These were specific, clear, and convincing reasons to reject Plaintiff's testimony.

Second, as discussed *supra* IV-A-1, the ALJ cited numerous examination findings in the record that were within normal levels. "[I]mprovement or normal findings over time are useful but the data points chosen must *in fact* constitute examples of broader development to satisfy the applicable specific, clear and convincing standard." *Bonnie B. v. Saul*, No. 3:20-CV-653-RBM, 2020 WL 7695332, at *8 (S.D. Cal. Dec. 28, 2020) (emphasis in original); *cf. Garrison*, 759 F.3d at 1018 (ALJ failed to meet clear and convincing standard where they "improperly singled out a few periods of temporary well-being from a sustained period of impairment and relied on those instances to discredit [claimant]"). The records cited by the ALJ were not isolated incidents, but many medical visits over the course of a year during which symptoms of Plaintiff's alleged mental impairments were less severe than her testimony. Although "subjective pain is not always verifiable through a physical examination," *Glanden v. Kijakazi*, 86 F.4th 838, 847 (9th Cir. 2023), "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt*, 53 F.4th at 498 (collecting cases) (emphasis in original). The Court thus finds this is a sufficiently clear and convincing reason for the ALJ to discount Plaintiff's subjective testimony under prevailing Ninth Circuit standards.[11]

And third, the ALJ concluded that "[s]ome of the physical and mental abilities and

---

[10] *See also Molina*, 674 F.3d at 1114 (where "there was no medical evidence that [claimant's] resistance [to treatment] was attributable to her mental impairment rather than her own personal preference," it is "reasonable for the ALJ to conclude that the level or frequency of treatment [was] inconsistent with the level of complaints").

[11] *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (upholding ALJ's finding that subjective complaints of pain were contradicted by normal examination findings).

social interactions" of Plaintiff's reported activities of daily living were "the same as those necessary for obtaining and maintaining employment." AR at 22. The ALJ pointed specifically to (1) a progress note indicating Plaintiff did not require help or supervision with: "attending to personal care without any problem, preparing meals, performing housework, shopping, driving, using a computer and a phone, managing finances, and managing her medications" and (2) other reports of Plaintiff: attending medical appointments, hanging out with or hosting family members, exercising, going for walks, going to mass, planning a trip, picking up her spouse from the airport, and taking on a caregiver role for others. *Id.* As Plaintiff correctly points out, the progress note indicates Plaintiff *did* require help or supervision with managing medications. More importantly, "the ALJ did not elaborate on *which* daily activities conflicted with *which* part of Claimant's testimony." *Burell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014). Many daily activities "are not easily transferable to what may be the more grueling environment of the workplace," but "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of [] functions that *are* transferable to a work setting, a specific finding as to this fact may be sufficient to discredit" subjective symptom testimony. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (emphasis in original). The ALJ's general finding that some of Plaintiff's daily activities may be inconsistent with some of Plaintiff's statements "is insufficient to meet our requirements of specificity." *Burrell*, 775 F.3d at 1138.

Thus, although one reason the ALJ provided was not supported by substantial evidence, the ALJ provided two additional clear and convincing reasons, supported by substantial evidence in the record, to discount Plaintiff's subjective symptom testimony. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008) (upholding adverse credibility finding where ALJ provided four reasons to discredit the claimant, two of which were invalid); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (same where one of several reasons ALJ gave for making adverse credibility finding was unsupported by the record); *Brown-Hunter*, 806 F.3d at 492

(an error is harmless when "it is inconsequential to the ultimate nondisability determination"). Accordingly, the Court finds that the ALJ did not err in discounting Plaintiff's subjective symptom testimony.

### 3. *Conflict between the RFC and the DOT*

As a third charge of error, Plaintiff asserts the ALJ failed to resolve a conflict between Plaintiff's RFC and the DOT's definition of light work. Dkt. No. 9 at 19-20. The Court finds there is no conflict, and that even if there were one, the ALJ resolved it.

The "Social Security Administration relies primarily on the [DOT] for information about the requirements of work in the national economy," and a vocational expert's testimony generally should be consistent with it. *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007) (quoting SSR 00-4p, 2000 WL 1898704, at *2). "When there is a conflict between the DOT and a VE's testimony, neither automatically prevails over the other." *Rosalie M. M. v. Saul*, No. ED CV 19-02347-RAO, 2020 WL 5503240, at *2 (C.D. Cal. Sept. 11, 2020). Rather, when "there is an apparent unresolved conflict between the VE evidence and the DOT, it is the duty of the ALJ to elicit a reasonable explanation for the conflict before relying on the VE's evidence." *Nabis-Smith v. Colvin*, No. 6:13-CV-01427-JE, 2015 WL 6964179, at *5 (D. Or. Nov. 9, 2015), *aff'd* 690 F. App'x 503 (9th Cir. 2017). "Failure to make such an inquiry is procedural error but such error may be harmless if there is no actual conflict between the VE's testimony and the DOT," *id.*, "or if the vocational expert had provided sufficient support for her conclusion so as to justify any potential conflicts." *Massachi*, 486 F.3d at 1153 n.19.

Plaintiff's RFC limited her to performing a range of light work for six hours sitting and four hours standing/walking in an eight-hour workday. AR at 15. The Commissioner defines "light work" as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," and may require "a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). According to the DOT, a job is considered light work "(1) when it requires walking or standing to a significant degree;" or

1  (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or
2  leg controls; and/or (3) when the job requires . . . constant pushing and/or pulling of
3  materials even though the weight of those materials is negligible." DOT, App'x C,
4  *available at* 1991 WL 688702.

5      The ALJ determined that Plaintiff could not perform the full range of light work.
6  Her "ability to perform all or substantially all of the requirements of this level of work has
7  been impeded by additional limitations." AR at 27. The ALJ questioned the vocational
8  expert whether jobs existed in the national economy for someone with Plaintiff's RFC.
9  *Id.* at 27, 44-46. The vocational expert testified that someone with Plaintiff's age, education,
10 work experience, and RFC "would be able to perform the requirements of representative
11 occupations such as" marker (DOT 209.587-034), routing clerk (DOT 222.687-022), and
12 inspector (DOT 559.687-074). *Id.* at 27-28, 45. Consistent with SSR 00-4p, the ALJ
13 explicitly asked the vocational expert if his testimony was "consistent with the DOT." *Id.*
14 at 46. The vocational expert testified that it was. *Id.*

15      Plaintiff argues the ALJ failed to resolve a conflict in that the DOT's definition of
16 light work requires the ability to stand and walk approximately six hours of an eight-hour
17 workday. Dkt. No. 9 at 20. She argues her limitation to only four hours of standing and
18 walking in a workday creates an apparent conflict that the ALJ failed to resolve. *Id.* at 20-
19 21. But the DOT "lists maximum requirements of occupations as generally performed, not
20 the range of requirements of a particular job as it is performed in specific settings. A VE
21 . . . or other reliable source of occupational information may be able to provide more
22 specific information about jobs or occupations than the DOT." SSR 00-4p at 3. In other
23 words, not every light work job will require the ability to walk six out of eight hours in a
24 workday. Furthermore, the "vocational expert testified that the sit/stand limitation to four
25 hours is not inconsistent with the DOT since each of the occupations allow for sit/stand
26 options at will." *Id.* at 28. Plaintiff asserts this testimony is inaccurate because "the DOT
27 narrative descriptions of the jobs identified do not support the notion that these jobs require
28 at least four hours of sitting" and because the "ability to sit/stand at will does not convey

1. the ability to accumulate at last four hours of sitting in a workday." Dkt. No. 13 at 5-6. The narrative descriptions may not affirmatively state that sitting is permitted for at least four hours in a workday, but the absence of those words does not evince an "obvious or apparent" conflict that would trigger the ALJ's duty to inquire further, especially considering the vocational expert's testimony that someone with Plaintiff's RFC could perform these jobs. *Lamear v. Berryhill*, 865 F.3d 1201, 1205 (9th Cir. 2017) ("We have explained that the conflict must be obvious or apparent to trigger the ALJ's obligation to inquire further."). And "[i]mportantly, even where the evidence of record is "susceptible to more than one rational interpretation," the Court "must defer to the Commissioner's interpretation of the evidence." *Terry v. Saul*, 998 F.3d 1010, 1013 (9th Cir. 2021).

In conclusion, the vocational expert's opinion "was supported by [his] unchallenged expertise and [his] reference to the Dictionary of Occupational Titles. This constituted substantial evidence in support of the ALJ's finding that [Plaintiff] could perform jobs existing in significant numbers in the national economy." *Terry*, 998 F.3d at 1013 (citing *Ford v. Saul*, 950 F.3d 1141, 1160 (9th Cir. 2020) ("qualified vocational expert's testimony as to the number of jobs existing in the national economy that a claimant can perform is ordinarily sufficient by itself to support an ALJ's step-five finding")).

**B. Substantial Evidence Supports the ALJ's Decision**

Having found no legal error in the ALJ's decision, the Court turns to the question of whether the RFC, and the ALJ's conclusion based on the RFC that Plaintiff was not disabled, is supported by substantial evidence. The Court has independently assessed the entire record, "weighing the evidence both supporting and detracting from the [ALJ's] conclusion." *Ahearn*, 988 F.3d at 1115. Based on this review, the Court finds substantial evidence supports the ALJ's decision. The Court summarizes that evidence below.

The record confirms Plaintiff suffers from the severe impairments listed above. *See, e.g.*, AR at 74-76, 194, 275-77, 314-24, 379-80, 390-400, 412-14. The record reflects frequent complaints of pain associated with these conditions, *id.* at 210-23, 416-22, 573-650, 678, 960-65, as well as reports of mental symptoms noted by the ALJ as "anxiety,

depression, panic attacks, hypervigilance, irritability when in social situations, frequent nocturnal awakenings, low motivation, difficulty trusting people, hopelessness, passive thoughts of suicidal ideation, poor energy, low appetite, low motivation, social isolation, and difficulty concentrating, remembering and completing tasks." *Id.* at 20, 57, 87, 416-419, 474, 521, 537.

Plaintiff reported in her Adult Function Report that her daily activities included praying and meditating, reading, attending doctors' appointments, caring for her spouse, sister, mom, and dogs, preparing meals, shopping and completing chores, and spending quality time with loved ones (although her impairments "affect [her] daily care" and make some of these activities more difficult). *Id.* at 216-223. Plaintiff's hearing testimony echoes this report. *Id.* at 39-42. Plaintiff's spouse provided a "Social Security Witness Statement." *Id.* at 262. The spouse reports observing Plaintiff struggle with completing physical tasks around the home, understanding others and communicating, and managing her pain. Plaintiff's elder sibling also provided a statement. *Id.* at 263-64. The sibling similarly reports observing Plaintiff struggle to effectively communicate and manage her pain and emotions. *Id.*

The Court has reviewed the record and verified numerous medical records over the years indicating Plaintiff had "clear and coherent" thought process, "grossly intact" memory, and "intact" judgment. *See supra* IV-A-1. Other administrative medical findings, such as Dr. Kertay's medical interrogatory response, similarly show Plaintiff was able to understand, remember, and carry out simple instructions and make judgments on "simple work-related decisions," and was only mildly limited in her ability to do the same with complex instructions. *Id.* at 1035-37.

The Court finds the foregoing is relevant and substantial evidence adequate to support the ALJ's RFC, and the subsequent determination based on Plaintiff's RFC that she was not disabled. Accordingly, the ALJ's decision will not be disturbed. *See Ahearn*, 988 F.3d at 1115 ("If substantial evidence in the record supports the ALJ's decision we must defer to the ALJ."); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner

of Social Security as to any fact, if supported by substantial evidence, shall be conclusive").

V.

## CONCLUSION

For the foregoing reasons, the Court concludes the ALJ's decision was not legally erroneous and that his determination that Plaintiff is not disabled was supported by substantial evidence in the record. Plaintiff's request for reversal and remand is therefore **DENIED**. The final decision of the Commissioner of Social Security is **AFFIRMED**. The Clerk of the Court shall enter judgment accordingly and terminate the case.

**IT IS SO ORDERED.**

Dated: August 21, 2025

*David Leshner*

Hon. David D. Leshner
United States Magistrate Judge